STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. CV-10-642


JOSEPH GELBAND, JR.,
          Plaintiff

v.                                      **ORDER**



MICHAEL CUNNIFF, ESQ. &
DANIEL HONDO,
          Defendants


1.    <u>Background</u>

          Pending before this court are several motions in this state action that arise

out of a deposition given in connection with a federal court action that Joseph Gelband

filed in the United States District Court against Police Officer Daniel Hondo and others.[1]

Joseph Gelband ("Gelband") alleges in the complaint in the pending state court action

that Attorney Cunniff("Cunniff") and Police Officer Hondo ("PO Hondo") intentionally[2]

and/or negligently[3] inflicted severe emotional distress upon Gelband during a deposition

of PO Hondo that was conducted on December 21, 2009 in connection with Gelband's

federal court action. Complaint ¶¶ 6, 7, 38, 39. Cunniff served as counsel to PO Hondo in

---

[1] The court takes judicial notice of *Gelband v. Hondo*, 2010 WL 1667586 (D. Me. April 23, 2010)(Docket No. 2:09-cv-0128-DBH)(hereinafter "Fed. Case"). The United States District Court entered a final judgment in favor of PO Hondo and all of his codefendants on June 1, 2010. Fed. Case Doc. No. 99. Gelband appealed this decision to the United States Court of Appeals for the First Circuit, which was filed under Docket No. 10-1803 and is currently pending. Fed. Case No. 100. Previous history includes the following: On July 28, 2009, United States District Court Judge D. Brock Hornby adopted a recommended decision on motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) that had been issued by United States Magistrate Judge Margaret Kravchuk on June 16, 2009, resulting in dismissal of all but Fourth Amendment claims against PO Hondo. Fed. Case Nos. 24, 28. On September 28, 2009, Judge Hornby denied Gelband's motion for reconsideration of his order on dismissal. Fed. Case. No. 37. On May 27, 2010, Judge Hornby adopted a recommended decision on summary judgment motions rendered by Magistrate Judge Kravchuk on April 23, 2010. Fed. Case Nos. 91-92, 97-98.
[2] Complaint ¶¶ 13-31.
[3] Complaint ¶¶ 32-37.

his defense of the federal suit, which alleged that PO Hondo and another officer arrested lacked probable cause when they arrested Gelband on November 27, 2007 for aggravated assault. Complaint ¶¶ 8, 9. The United States District Court dismissed Gelband's federal court action, finding that the officers, including P.O. Hondo, had probable cause to arrest Gelband on November 27, 2007. *Gelband v. Hondo*, 2010 U.S.Dist. LEXIS 136695 (D.Me., April 23, 2010).[4]

Gelband alleges in his state court complaint that his emotional distress damages are due to Hondo's testimony in response to a question asked by Cunniff at the deposition Gelband had "confessed" and that the "confession" had been a factor in determining probable cause for Gelband's arrest. Complaint ¶¶ 23, 25, 28-31, 38-44. Gelband alleges that this testimony of Hondo was inconsistent with his previous written and oral statements, and inconsistent with Cunniff's previous representations and arguments in the federal case. Complaint ¶¶ 10-12, 15-18, 25. Finally, Gelband alleges that Hondo's testimony at the deposition regarding the confession was false and that Cunniff instigated Hondo's perjury in the deposition. Complaint ¶¶ 15-24, 26-27, 33-37.

In the proposed amended complaint, Gelband adds a 42 U.S.C. § 1983 cause of action to his state law tort claims. Gelband alleges that the defendants were acting under the color of law. Amended Complaint ¶¶ 4, 5. He further alleges that the defendants' conduct violated plaintiff's Fourteenth Amendment Right to Due Process of Law. Amended Complaint ¶¶ 31-34.

2.    Pending Motions

Defendants filed a motion to dismiss the complaint on January 26, 2011 instead of filing an answer. Plaintiff did not file an opposition to that motion but filed on February

---

[4] *Gelband v. Hondo*, 2010 U.S. Dist. LEXIS 136695, 40-42.

16, 2011 a motion for leave to file amended complaint and for enlargement of time to respond to the motion to dismiss. Defendants filed on March 10, 2011 their objection to plaintiff's motion to amend complaint along with their motion for enlargement of time to answer plaintiff's first amended complaint. Plaintiff filed on March 23, 2011 a "reply for leave to file amended complaint."

3.     Rule 12(b)(6) Motion

Defendants seeks a dismissal of the complaint and the proposed amended complaint on the ground that plaintiff has failed to state a claim upon which relief may be granted. Defendants contend that they have an absolute privilege for relevant communications and testimony made preliminary to and in the course of litigation. The defendants argue that, even if they do not have such a privilege, the complaint fails to state a claim for either intentional or negligent infliction of emotional distress. As to the proposed amended complaint, the defendants argue that allowing plaintiff to amend the complaint would be futile. Plaintiff counters (1) this is a case of first impression that presents unique circumstances, and (2) the policy consideration underlying case law cited by defendants regarding immunity does not apply. Plaintiff asks the court to grant his motion to amend and permit him to file a complete memorandum in reply to defendants' motion to dismiss.

a.     12(b)(6) Standard

Dismissal is warranted when it appears beyond doubt that the plaintiff is not entitled to relief under any set of facts that might be proved to support the claim. *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A. 2d 1244, 1246. The court must take the material allegations of the complaint as admitted. *Moody v. State Liquor & Lottery*

*Comm'n*, 2004 ME 20, ¶ 7, 843 A. 2d 43, 47. In deciding a motion to dismiss, the court must view the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Napieralski v. United Church of Greater Portland*, 2002 ME 108, ¶ 4, 802 A. 2d 291, 392.

b.     Rule 15(a) Standard

A party may amend its pleading once as a matter of course before a responsive pleading is filed. M.R.Civ.P. 15(a). The Maine Law Court has not yet ruled whether a motion to dismiss is considered a responsive pleading for the purposes of Rule 15. *See Jones v. Suhre*, 345 A. 2d 515, 517 n.4 (Me. 1975)(The court suggested no opinion on "whether defendant's three-pronged Motion to Dismiss is in any part a responsive pleading" because this issue was not argued).[5] The court does not need to reach this issue if the court decides to amend complaint would be futile. *Glynn v. City of So. Portland*, 640 A. 2d 1065, 1067 (Me. 1994). Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Glassman v. Computervision Corp.*, 90 F. 3d 617, 623 (1st Cir. 1996). The standard then in this instance is same as that applied when determining a Rule 12(b)(6) motion, that is, whether the proposed amended complaint containing essentially the same factual allegations of the original complaint fails to state a claim under 42 U.S.C. § 1983.

The court intends to address the motion to dismiss the complaint and the proposed amended complaint before requiring defendants to answer either pleading. However, before so ruling, the court grants plaintiff leave to file an opposition to the motion to

---

[5] Citing *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010), the defendant argues that plaintiff in filing a motion to amend the pleadings waived the right to amend as a matter of course. This court does not reach this issue.

dismiss *not later* than July 8, 2011. Plaintiff's opposition shall comply with M.R.Civ.P. 7(c). Defendants thereafter shall file any reply July 15, 2011 in accordance with M.R.Civ.P. 7(d). The court will then take the motion to dismiss under advisement.

The entry is:

1.     Plaintiff to file opposition to motion to dismiss by July 8, 2011.

2.     Defendants to file a reply by July 15, 2011.

Date: June 8, 2011

Joyce A. Wheeler, Justice

K OF COURTS
ierland County
ʼ Street, Ground Floor
ind, ME 04101

SHAUN GARRY ESQ
12 CITY CENTER
PORTLAND ME 04101



RK OF COURTS
mberland County
ury Street, Ground Floor
rtland, ME 04101

JOSEPH GELBAND
540 CONGRESS ST #1
PORTLAND ME 04101

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-10-642
JAW-(U.) - 9/30/2011

JOSEPH GELBAND, JR.,
      Plaintiff

v.

**DECISION AND ORDER**

MICHAEL CUNNIFF, ESQ. &
DANIEL HONDO,
      Defendants

STATE OF MAINE
Cumberland ss. Clerk's Office

SEP 30 2011

RECEIVED

## INTRODUCTION

This case comes before the court on the defendants' motion to dismiss the

plaintiff's complaint and the plaintiff's subsequent motion to amend the complaint. The

defendants have also filed a motion to extend the time for reply to the plaintiff's

opposition to the defendant's motion to dismiss.

1. Allegations of the Complaint

The motions pending before this court arose out of a deposition given in

connection with a federal court action that Joseph Gelband ("Gelband" or "Plaintiff")

filed in the United States District Court against Police Officer Daniel Hondo and others.[1]

---

[1] The court takes judicial notice of *Gelband v. Hondo*, 2010 U.S. Dist. LEXIS 136695 (D. Me. April 23, 2010) (Docket No. 2:09-cv-0128-DBH) (hereinafter "Fed. Case"). The United States District Court entered a final judgment in favor of PO Hondo and all of his codefendants on June 1, 2010. Fed. Case Doc. No. 99. Gelband appealed this decision to the United States Court of Appeals for the First Circuit, filed under Docket No. 10-1803. Fed. Case Doc. No.100. The decision was affirmed on February 23, 2011. Defs.' Reply to Pl.'s Opp. Ex. B. Mr. Gelband moved for reconsideration of the affirmation but was denied. Previous history includes the following: On July 28, 2009, United States District Court Judge D. Brock Hornby adopted a recommended decision on motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) that had been issued by United States Magistrate Judge Margaret Kravchuk on June 16, 2009, resulting in dismissal of all but Fourth Amendment claims against PO Hondo. Fed. Case Doc. Nos. 24, 28. On September 28, 2009, Judge Hornby denied Gelband's motion for reconsideration of his order

The complaint in the pending state court action alleges that Attorney Cunniff ("Cunniff") and Police Officer Hondo ("PO Hondo") (collectively "Defendants") intentionally, Compl. ¶¶ 13-31, and/or negligently, Compl. ¶¶ 32-37, inflicted severe emotional distress upon Gelband during a deposition of PO Hondo that was conducted on December 21, 2009 in connection with Gelband's federal court action. Compl. ¶¶ 6, 7, 38, 39. Cunniff acted as counsel to PO Hondo in his defense of the federal suit, which alleged that PO Hondo and another officer arrested Gelband for aggravated assault without probable cause on November 27, 2007. Compl. ¶¶ 8, 9. The United States District Court dismissed Gelband's federal court action, finding that the officers, including PO Hondo, had probable cause to arrest Gelband. *Gelband v. Hondo*, 2010 U.S. Dist. LEXIS 136695 (D. Me. April 23, 2010).[2]

---

on dismissal. Fed. Case. Doc. No. 37. On May 27, 2010, Judge Hornby adopted a recommended decision on summary judgment motions rendered by Magistrate Judge Kravchuk on April 23, 2010. Fed. Case Doc. Nos. 91-92, 97-98.

[2] The Magistrate Judge concluded: "After all the effort by the parties and this court in working up and sifting through this factual record, it is evident to me that the resolution of this Fourth Amendment dispute is straight forward. Tully, Hondo, and Frazier are entitled to judgment as a matter of law on their motions for summary judgment and Gelband's motion for partial summary judgment must be denied. In his memorandum in support of his motion for summary judgment and his surreply to defendants' motions Gelband's most persistent argument is that Tully and Hondo did not sufficiently investigate his injuries when they made the determination that they had probable cause to arrest Gelband for the injuries to Hilton and Bates which Gelband does not dispute he caused. At best this is an argument that the officers might have had grounds to also charge Hilton and/or Bates with an assault on Gelband. This possibility does not defeat the officers' case that they had probable cause to arrest Gelband. Obviously brawl or (to use Gelband's phrasing) 'fracas' situations can potentially result in arrests of more than one of the participants in the fray; it is not a question of only being able to choose one person to arrest. Gelband does not dispute that he at no time requested that the officers charge Hilton and/or Bates, whereas both women requested that they charge Gelband. Gelband does not contest that he was responsible, by using a telephone as a weapon, for the injuries sustained by Bates and Hilton, both of whom required treatment, including stitches. Gelband's theory is that he acted in self-defense and that the officers did not sufficiently press him to explain this defense. However, ... Hondo and Tully were not in a position to hold a 'mini-trial' before they made the decision to arrest Gelband, ... and it would have been entirely inappropriate had they done so." *Gelband v. Hondo*, 2010 U.S. Dist. LEXIS 136695, *40-42 (citations and quotation marks omitted).

Gelband alleges in his state court complaint that his emotional distress damages[3] are due to PO Hondo's response to a question asked by Cunniff at the deposition and the circumstances surrounding that question and response. Cunniff asked whether Gelband had "confessed" and whether the "confession" had been a factor in determining probable cause for Gelband's arrest. Compl. ¶¶ 23, 25, 28-31, 38-44. PO Hondo testified, in response to this question, that Gelband had confessed. Compl. ¶ 23. Gelband alleges that this testimony was inconsistent with PO Hondo's previous written and oral statements and inconsistent with Cunniff's previous representations and arguments in the federal case. Compl. ¶¶ 10-12, 15-18, 25. Finally, Gelband alleges that PO Hondo's testimony at the deposition regarding the confession was false and that Cunniff suborned PO Hondo's perjury in the deposition. Compl. ¶¶ 15-24, 26-27, 33-37.

In the proposed amended complaint, Gelband adds a federal civil rights claim, brought under 42 U.S.C. § 1983, to his state law tort claims. Gelband alleges that the Defendants were acting under the color of law. Am. Compl. ¶¶ 4, 5. He further alleges that Cunniff admitted suborning perjury, Am. Compl. ¶¶ 31-34, and that the conduct alleged violated Gelband's Fourteenth Amendment right to due process of law. Am. Compl. ¶ 34.

2. Pending Motions

Instead of filing an answer, the Defendants filed a motion to dismiss the complaint on January 26, 2011. On February 26, 2011, instead of filing an opposition to

---

[3] As damages, Gelband alleges, "Plaintiff was shocked and terrified to hear a police officer, under oath, effectively re-write an arrest report written two years previously to include a new and false allegation that plaintiff had made a confession." Compl. ¶ 41. He further alleges in the complaint, "Plaintiff was shocked and terrified at the realization that Cunniff was able to, and in fact so easily and transparently suborned Officer Hondo's perjury during a short break at the tail end of a deposition." Id. ¶ 42.

3

that motion, the Plaintiff filed a motion for leave to file an amended complaint and for enlargement of time to respond to the Defendants' motion to dismiss. Defendants objected to the Plaintiff's motion to amend the complaint. On March 23, 2011, Plaintiff filed a reply to the Defendants' objection.

On June 9, 2011, this court issued an order indicating that the court would rule on these two pending motions before any responsive pleadings must be filed. The court also granted the Plaintiff leave to file an opposition to the motion to dismiss by July 8, 2011 and the Defendants leave to reply to that opposition by July 15, 2011. The Plaintiff filed his opposition on July 11, 2011. Due to the Plaintiff's tardiness, on July 12, 2011, the Defendants filed a motion for enlargement of time, until July 22, 2011, to reply to the Plaintiff's opposition. The Defendants subsequently filed their reply on July 22, 2011. The court will address below all pending motions.

## DISCUSSION

1.      Motion to Extend Time for Filing Reply

The court grants the Defendants' July 12, 2011 motion for enlargement of time for filing their reply to the Plaintiff's opposition to the motion to dismiss. The court notes that the Defendants have not objected to the Plaintiff's late filing and, by filing a reply, have apparently acquiesced to the late filing. Also, the Plaintiff has not objected to the Defendants' motion for enlargement of time. It is within the court's discretion to accept both filings.

2.      Motion for Leave to File Amended Complaint

The Plaintiff moved for leave to amend the complaint in response to the Defendants' motion to dismiss. The Defendants oppose this motion on three grounds: that

4

the Plaintiff has waived his right to amend as a matter of course because the Defendants' motion to dismiss is a responsive pleading and because the Plaintiff filed a motion seeking leave to amend rather than simply filing the amended complaint; that the amendment is futile because the Plaintiff continues to fail to state a cause of action on which relief may be granted; and because the Plaintiff's motion does not comply with M.R. Civ. P. 7(3).

### a. Standard for Granting Leave to Amend

A party may amend its pleading once as a matter of course before a responsive pleading is filed.[4] Otherwise, a party may only amend its pleading by leave of the court, which must be freely given when justice so requires. M.R. Civ. P. 15(a).[5] Notwithstanding the fact that pro se litigants are held to the same standards as represented litigants, *Richards v. Bruce*, 1997 ME 61, ¶ 8, 691 A.2d 1223, the policy of freely granting leave to amend is applied even more liberally to the pleadings of pro se litigants. *Nowicki v. Loco Inc.*, 2005 Me. Super. LEXIS 108, *2 (September 22, 2005). Typically this is done when the pro se litigant has failed to meet the technical requirements of pleading rather than substantive matters. *See id.* at * 2-3.

Although a court will typically allow a motion to amend a pleading when there is no bad faith or delay and when there is no prejudice to the other party, *Chrysler Credit*

---

[4] The Maine Law Court has not yet ruled whether a motion to dismiss is considered a responsive pleading for the purposes of Rule 15. *See Jones v. Suhre*, 345 A.2d 515, 517 n.4 (Me. 1975) (The court suggested no opinion on "whether defendant's three-pronged Motion to Dismiss is in any part a responsive pleading" because this issue was not argued). It is unnecessary for the court to reach this argument because the motion is denied on other grounds.

[5] Citing *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010), the Defendants argue that the Plaintiff, by filing a motion to amend the pleadings, waived the right to amend as a matter of course. This court does not reach whether the Plaintiff has waived his right to amend as a matter of course. However, because the Plaintiff has filed a motion seeking leave to amend, this court will treat this as inviting the court's ruling.

5

*Corp. v. Bert Cote's L/A Auto Sales*, 1998 ME 53 ¶ 15, 707 A.2d 1311, when the amendment would be futile the court may properly deny it despite lack of bad faith or delay. *Glynn v. City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994). When the complaint, as amended, would fail to state a claim on which relief can be granted under the Rule 12(b)(6) standard, amendment is futile. *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

Under M.R. Civ. P. 7(b)(3), a party must file, along with any motion, a memorandum of law including citations to supporting authority, a draft order granting the motion and stating specifically the relief to be granted by the motion, and a notice of hearing if a hearing date is available. The purpose of filing a draft order is to inform the court the specific relief being requested. *See Thibodeau v. Cole*, 1999 ME 150, ¶ 5, 740 A.2d 40. When the court is presented with no facts indicating what an amendment to a pleading would entail the court has no choice but to deny the motion to amend. *Bahre v. Liberty Group, Inc.*, 2000 ME 75, ¶ 7, 750 A.2d 558; *Thibodeau*, 1999 ME 150, ¶ 5, 740 A.2d 40.

### b. Amendment of the Complaint Is Futile

The Plaintiff's proposed amended complaint, submitted to the court along with his motion to amend, asserts an additional cause of action under 42 U.S.C. § 1983 against the Defendants. Am. Compl. ¶¶ 15-34. The section 1983 cause of action and the claims of intentional and/or negligent infliction of emotional distress are based on the same set of facts alleged in the original complaint with the additional allegation that Cunniff admitted that he suborned perjury. Am. Compl. ¶¶ 31-33. The court finds that the proposed amended complaint is futile because it fails to state a claim under 42 U.S.C. § 1983 and

6

the additional allegation does not cure the defects of the original complaint. Because the question of futility uses the same standard of review as a motion to dismiss for failure to state a claim, the court will discuss both the amended complaint and the original complaint together below.

Although the Plaintiff did not file a draft order with his motion to amend, as required by M.R. Civ. P. 7(b)(3), he did file a proposed amended complaint. It cannot be said that the court was not presented with facts indicating what relief the Plaintiff sought. Unlike the situations in *Thibodeau* and *Bahre*, the Plaintiff has indicated how the complaint would be amended if relief were granted. Regardless of whether the Plaintiff sufficiently complied with M.R. Civ. P. 7(b), the motion is denied because it is futile.

3.      Motion to Dismiss

The defendants seek a dismissal of the complaint and the proposed amended complaint on the ground that plaintiff has failed to state a claim upon which relief may be granted. They contend that they have an absolute privilege for relevant communications and testimony made preliminary to and in the course of litigation. The Defendants also argue that, even if they do not have such a privilege, the complaint fails to state a claim for either intentional or negligent infliction of emotional distress. As to the proposed amended complaint, the Defendants argue that allowing plaintiff to amend the complaint would be futile because the amended complaint fails to state a claim under 42 U.S.C. § 1983 and because the litigation privilege also applies. Plaintiff counters that (1) this is a case of first impression that presents unique circumstances, and (2) the policy consideration underlying case law cited by defendants regarding immunity does not apply.

7

### a. 12(b)(6) Standard

Dismissal is warranted when it appears beyond doubt that the plaintiff is not entitled to relief under any set of facts that might be proved to support the claim. *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A. 2d 1244. The court must take the well-pleaded material allegations of the complaint as admitted. *Halco v. Davey*, 2007 ME 48, ¶ 6, 919 A.2d 626. However, the court is not bound by the legal conclusions stated in the complaint. *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166. Immunities and other affirmative defenses may be raised on a motion to dismiss as long as facts that give rise to the immunity or defense appear on the face of the complaint. *Munjoy Sporting & Athletic Club v. Dow*, 2000 ME 141, ¶ 17, 755 A.2d 531.

In deciding a motion to dismiss, the court must view the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Napieralski v. United Church of Greater Portland*, 2002 ME 108, ¶ 4, 802 A.2d 291. The general rule is that only the facts alleged in the complaint may be considered on a motion to dismiss. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. However, a narrow exception allows the court to consider "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint, without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged." *Id.* at ¶¶ 9-10. These documents then merge into the pleadings. *Id.* The Law Court has stated, "the purpose for this exception is that if courts could not consider these documents, 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to

8

attach a dispositive document on which it relied.'" *Id.* (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). The court therefore takes judicial notice of public record in the federal action, *Gelband v. Hondo,* Docket No. 2:09-cv-00128-DBH, that was the genesis of the state lawsuit and referenced by Gelband in his complaint.

### b.    *Absolute Privilege*

The Maine Law Court has extended to parties, witnesses, and attorneys, an absolute privilege for relevant communications and testimony made preliminary to and in the course of litigation. *Dineen v. Daughan,* 381 A.2d 663, 664-65 (Me. 1978); *see also* Restatement (Second) of Torts §§ 587 (parties) & 588 (witnesses) (1977). The Law Court reasoned that "public policy requires that witnesses shall not be restrained by the fear of being vexed by actions at the instance of those who are dissatisfied with their testimony." *Id.* (citation and quotation marks omitted). "A witness is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding and as part of a judicial proceeding in which he is testifying, if it has some relation thereto." *Dunbar v. Greenlaw,* 128 A.2d 218, 223 (1957) (quoting Restatement of the Law, Torts, § 588). The absolute privilege applies so long as the offensive content of the testimony or pleadings is relevant to the proceedings. *Dineen,* 381 A.2d at 665; *Dunbar,* 128 A.2d at 222-23.

Although this privilege has its origins in the law of libel and slander, it has been expanded to all causes of action when it applies. *Bradbury v. GMAC Mortg., LLC,* 2011 U.S. Dist. LEXIS 49810, * 5 (D. Me. May 9, 2011) (citing Jack H. Simmons et al., *Maine Tort Law* § 17:09 at 17-21 (2004)). *See also Heavrin v. Nelson,* 384 F.3d 199, 202 n.2

9

(6th Cir. 2004) (applying Kentucky law applying privilege to claim of fraud); *Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP*, 175 F.3d 14, 17-18 (1st Cir. 1999) (discussing New Hampshire and Massachusetts law and dismissing claim of malpractice in addition to a defamation claim); *Begier v. Strom*, 54 Cal. Rptr. 2d 158, 161 (Cal. Ct. App. 1996) ("[I]nsofar as plaintiff alleges defendant made false accusations within the dissolution action, defendant's statements are privileged and cannot give rise to a cause of action for intentional infliction of emotional distress."); *Kachig v. Boothe*, 99 Cal. Rptr. 393, 403 (Cal. Ct. App. 1971) (applying the privilege to a claim for intentional infliction of emotional distress); *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d 606, 608 (Fla. 1994) (tortious interference with a business relationship); *Hurley v. Towne*, 156 A.2d 377, 379 (Me. 1959) (applying the privilege to a claim of false imprisonment); *Panitz v. Behrend*, 632 A.2d 562, 564 (Pa. Super. Ct. 1993) ("[the privilege] has now been extended to include all tort actions based on statements made during judicial proceedings"). Specifically, the doctrine of absolute litigation privilege has been recognized to bar claims for intentional infliction of emotional distress, *Davis v. Currier*, 1997 ME 199, ¶ 6, 704 A.2d 1207, and claims under 42 U.S.C. § 1983, *Briscoe v. Lahue*, 460 U.S. 325, 331-32 (1983). The Supreme Court has determined that police officers and witnesses are entitled to absolute immunity "even if the witnesses knew the statements were false and made them with malice." *Briscoe*, 460 U.S. at 332; *see also Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991) (holding that prosecution witnesses are entitled to immunity under *Briscoe*). This immunity extends to all persons, whether governmental, expert, or lay witnesses, who are "integral parts of the judicial process." *Briscoe*, 460 U.S. at 335.

10

The Plaintiff argues that there is "ample precedent" for making exceptions to the doctrine of absolute immunity in litigation. Pl.'s Reply Mot. to File Am. Compl. 2. However, the only case cited by the Plaintiff does not actually create an exception. Rather, it establishes that the party, a prosecutor, was not acting in the course of litigation and, therefore, had not met the prerequisites for the privilege to apply. *Van de Kamp v. Goldstein*, 129 S.Ct. 855, 861 (2009). The Supreme Court has specifically stated that the policy reasons supporting the litigation privilege apply equally to police officers testifying as witnesses and that there should be no exception for police officers even in cases of alleged perjury. *Briscoe*, 460 U.S at 341-43. Allowing police officers immunity in connection with acting as a witness prevents undermining their contribution to the judicial process and prevents undermining the effective performance of their other public duties. *Id.* at 343.

The complaint claims that PO Hondo's testimony that Gelband had "confessed" and that the "confession" was "a factor in determining probable cause" for his arrest in response to questions by Attorney Cunniff was both false and the source of the emotional distress damages that he allegedly suffered. Compl. ¶¶ 23, 25, 28-31 38-44. The deposition of PO Hondo in the federal court action discloses the actual deposition testimony:

Q. Now, back in the context of this case you asked, according to your testimony earlier, Mr. Gelband what happened; isn't that right?

A. Correct.

Q. And how did he respond to that question?

A. He said I am not sure, I may have hurt the girls.

Q. Now, is it fair to say that that was a confession?

11

A. Yes.

Q. And at the time that you were making a decision about whether to arrest Mr. Gelband how did that fit into other fact and circumstances that you considered before placing him under arrest?

A. It coincided with what the two females were telling us had occurred, Mr. Gelband had hurt them.

Q. And what about their physical appearances before you made the arrest of Mr. Gelband, how did that factor in?

A. Their injuries were significant, they were severe. Lacerations that required stitches – that we were informed required stitches. There was blood, bruising.

Q. And in terms of establishing probable cause, how did that condition of each of those two victims play in your decision making?

A. It helped us determine there was probable cause to arrest Mr. Gelband.

Fed. Case Doc. No. 65 at 69:5-70:3 (attached to Defs.' Mot. to Dismiss Ex. B).

The absolute privilege analysis requires the court first ascertain whether the statement under scrutiny was made "preliminary to and in the course of litigation." The deposition took place during the discovery phase of the federal lawsuit, *Gelband v. Hondo*. Compl. ¶¶ 6-7, 14, 23, 25. This court concludes that the statements in question took place preliminary to and in the course of litigation.

The absolute privilege analysis requires the court determine next whether the statement at issue was "relevant to the proceedings." The central fact in the federal lawsuit, *Gelband v. Hondo*, was PO Hondo's assessment of probable cause, which included the facts and circumstances, as PO Hondo understood them, at the time of Gelband's arrest for aggravated assault.[6] Compl. ¶¶ 6-9. Statements made by PO Hondo

[6] The Magistrate Judge Kravchuk characterized the issue in the federal action as follows: "…Gelband focused on his contention that the arresting officers lacked probable cause for his

12

during a deposition regarding the facts and circumstances that he understood at the time of Gelband's arrest were relevant to the judicial proceedings in *Gelband v. Hondo*. Therefore, the complaint on its face has alleged facts that give rise to the applicability of the litigation privilege and the court may consider that defense on the motion to dismiss.

The Plaintiff argues that he has presented a case of first impression because the conduct and statements that are at the basis of Gelband's emotional distress and section 1983 claims were admittedly perjured. Pl.'s Opp. Defs.' Mot. Dismiss 1. However, the public records in the federal action, to which the Plaintiff cites and attaches to his memorandum opposing the motion to dismiss, do not support the Plaintiff's allegation that Cunniff admitted to suborning perjury. Gelband points to a document written by Cunniff, on behalf of PO Hondo, filed in the federal action and quotes the words "that he improperly posed a deposition question to Officer Hondo" and "counsel for an opposing party has an ethical duty to zealously defend his clientele...." Pl.'s Opp. Defs.' Mot. Dismiss Ex. A. Gelband fails to include in his exhibit the prior page (attached to the Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss at Ex. A), which makes clear that Cunniff was summarizing Gelband's argument, not making admissions. The Plaintiff cannot survive a motion to dismiss by asserting a bald accusation in the complaint when the provided support clearly belies the assertion.

The Plaintiff also argues that the policy interests supporting the privilege do not apply to this case because the litigation he brings is not "vexatious" or "bothersome." As the case law makes clear, the litigation privilege is designed to prevent exactly this type

---

arrest, honing in on his assertion that the police disregarded evidence, including his bleeding head wound, and 'all sorts of exculpatory evidence.'" 2010 U.S. Dist. LEXIS 136695 *3 (D. Me. April 23, 2010).

of case and is especially important when police officers are acting as witnesses. The fact that the Plaintiff does not plan to undertake further discovery does not mean that the lawsuit is not bothersome to the Defendants nor that it is not distracting from PO Hondo's public duties.

The statements made by PO Hondo during the deposition in the federal action are absolutely privileged under Maine law. Even, assuming the facts of the complaint are true, as the court must on a motion to dismiss pursuant to Rule 12(b)(6), the complaint must be dismissed with prejudice because the alleged perjurious statements are absolutely privileged under Maine law.

Notwithstanding this absolute defense applicable to the two claims asserted in the complaint and the additional claim asserted in the amended complaint, the court further discusses whether the Plaintiff's complaint or amended complaint sufficiently pleads each cause of action.

c.     *Intentional Infliction of Emotional Distress*

In order to recover for intentional infliction of emotional distress, a plaintiff must establish the following elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [the defendant's] conduct;
> (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;
> (3) the actions of the defendant caused the plaintiff's emotional distress; and
> (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Lyman v. Huber*, 2010 ME 139, ¶ 15, 10 A.3d 707 (quoting *Curtis v. Porter*, 2001 ME 158, ¶10, 784 A.2d 18.).

14

The court, in performing its gatekeeper function, must determine whether the alleged conduct may be "reasonably regarded as so extreme and outrageous to permit recovery." *Walton v. Nalco Chem. Co.*, 272 F.3d 13, 19 (1st Cir. 2001) (quoting *Champagne v. Mid-Maine Medical Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842 (1998)). This is an extremely high standard and, in many cases, very bad conduct has been held to not meet the standard. *See, e.g., Champagne v. Mid-Maine Medical Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842 (1998) (nursing student bringing newborn to wrong mother to feed for three to five minutes was unfortunate but was not extreme and outrageous); *Batson v. Shiflett*, 602 A.2d 1191 (Md. 1992) (even though accusations of conspiracy, perjury and falsification of records in labor dispute were defamatory, they did not satisfy the exacting standard for extreme and outrageous conduct); s*ee also Carraway v. Cracker Barrel Old Country Store, Inc.*, 2003 U.S. Dist. LEXIS 12326, at * 42-43 (D. Kan. July 16, 2003) (deciding that spreading false rumors to former coworkers and customers that "plaintiff stole money, used drugs, had a drinking and/or gambling problem and was [a] lesbian" was not extreme and outrageous conduct establishing intentional infliction of emotional distress); *Hanssen v. Our Redeemer Lutheran Church,* 938 S.W.2d 85 (Tex. App. 1996) (accusing employee of misappropriating church funds was not deemed extreme and outrageous conduct). In Maine, conduct that alone is not extreme and outrageous may become so when there exists a pattern of such conduct over a prolonged period of time. *Lyman v. Huber*, 2010 ME 139, 10 A.3d 707.

The complaint alleges that the extreme and outrageous conduct here was that PO Hondo, under questioning from Cunniff, improperly characterized Gelband's prearrest

statements as a confession.[7] Viewing all the facts and circumstances in a light most favorable to Gelband, the conduct alleged in the complaint is not so extreme and outrageous as to exceed all bounds of decency. There was no pattern of conduct alleged and the conduct in question falls within the types of behavior regularly found to not constitute extreme and outrageous conduct. Because Gelband has failed to assert a set of facts showing that the Defendants' conduct was "extreme and outrageous," he cannot state a claim for intentional infliction of emotional distress and the court does not address whether he has met the other elements of the claim.

### d. Negligent Infliction of Emotional Distress

To prevail on a claim of negligent infliction of emotional distress, a plaintiff must establish that:

> one, that the defendant was negligent, that is that the defendant acted or failed to act in a manner which a reasonably prudent person or corporation would act in the management of their affairs taking into account all of the circumstances of this case; two, that emotional distress to the plaintiff was a reasonably foreseeable result of the defendant's negligent act; and, three, that the plaintiff suffered serious emotional distress as a result of the defendant's negligence.

*Gayer v. Bath Iron Works* Corp., 687 A.2d 617, 621-22 (Me. 1996). In order to prove the first element the plaintiffs must demonstrate that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm. *Devine v. Roche Biomed. Labs., Inc.*, 637 A.2d 441, 447 (Me. 1994).

---

[7] The amended complaint also asserts that the Defendants admit that this question and answer were perjurious. As noted in section 3(b) above, the Plaintiff has failed to sufficiently allege this admission because the documents attached as support are contrary to the allegation. Therefore, the court does not consider this allegation.

16

The establishment of a duty is a matter of law to be decided by the court. *Bryan R. v. Watchtower Bible & Tract Soc'y of NY, Inc.*, 1999 ME 144, ¶¶ 12, 14, 738 A.2d 839. There is no general duty to avoid negligently causing emotional harm to others. *Cole v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18. The Law Court has recognized that a duty exists in two limited circumstances. The first is when there is a special relationship between the parties. *Id.* at ¶ 19; *see, e.g., Rowe v. Bennett*, 514 A.2d 802, 807 (Me. 1986) (allowing patient to proceed against her therapist for sexual involvement with the patient's companion); *cf. Bryan R.*, 1999 ME 144, ¶ 17, 738 A.2d 839 (concluding no special relationship existed between minister and child of church members). And the second is when "bystander liability" exists. *Cole*, 2001 ME 158, ¶ 19. Also, negligent infliction of emotional distress may lie when the emotional distress claimed is based on an independent tort. *Id.*

Gelband has failed to state a claim for negligent infliction of emotional distress because he fails to allege a duty of care. No special relationship has been alleged, nor exists, sufficient to create a recognized duty under Maine law. The parties are related as plaintiff/defendant and as police officer/arrestee. Neither of these relationships rises to the level of creating a duty not to cause emotional harm like the therapist/patient relationship recognized in *Rowe*. Bystander liability does not exist here because the Plaintiff did not witness physical harm to another caused by the negligence of the Defendants. Additionally, there is no independent tort supporting the claim for emotional distress. The Plaintiff's claim for intentional infliction of emotional distress cannot provide this support. Plaintiff has failed to state a cause of action under that claim because the Defendants statements are absolutely privileged and not "extreme and

17

outrageous." Furthermore, there is no tort of perjury.[8] *Cole v. Chellis*, 119 A. 623, 623 (Me. 1923). The facts underlying the complaint do not establish an independent tort on which the Plaintiff may recover any emotional distress damages. Accordingly, Gelband has failed to state a claim for negligent infliction of emotional distress.

e.     *42 U.S.C. § 1983*

The Plaintiff pleads that he was deprived of his Fourteenth Amendment right to due process of law. Am. Compl. ¶ 34. He also alleges that PO Hondo and Cunniff were acting under color of state law. Am. Compl. ¶¶ 4,5. Section 1983 of 42 U.S.C. creates a private right of action for an individual who has been deprived of the rights guaranteed under the United States Constitution or other laws, by a person acting under the color of state law. To state a claim under 42 U.S.C. § 1983 a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

To classify conduct as occurring "under the color of state law" there must be a misuse of power, possessed by the defendant by virtue of state law, and made possible only because the wrongdoer was clothed with the authority of state law. *Monroe v. Pape*, 365 U.S. 167, 184 (1961), *overruled on other grounds by Monell v. Dep't Soc. Servs.*, 436 U.S. 658 (1978). One's status as a state official does not mean that all actions are done under color of state law. *Bates v. New York City Transit Auth.*, 721 F. Supp. 1577,

---

[8] Although there is a statutory cause of action for civil perjury, 14 M.R.S. § 870 (2011), the Plaintiff not only does not allege such a cause of action but would also fail to state a cause of action under this statute because no judgment was entered against him as a result of any perjury. *Bean v. Cummings*, 2008 ME 18, 939 A.2d 676 (stating the elements of civil perjury).

18

1580 (E.D.N.Y. 1989). It is the actions that the person undertakes, rather than their status, which is determinative of whether he or she is acting under color of state law. *Id.*

A person does not "act under color of law" merely by testifying at trial. *Brisco v. LaHue*, 460 U.S. 325, 329-30 (1983) ("It is beyond question that, when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.'"). The case law interpreting section 1983 makes clear that when a police officer testifies about what he has done in the past using his state-granted powers, he is not also acting pursuant to state power: that is, when testifying an officer is not acting under the color of state law. *See Bennett v. Passic*, 545 F.2d 1260, 1263-64 (10th Cir. 1976) (sheriff and other defendants who testified at criminal trial were not acting under color of state law); *Myers v. Bull*, 462 F. Supp. 107, 108 (E.D. Mo. 1978), *aff'd,* 599 F.2d 863 (8th Cir. 1979) (police officer who knowingly and willfully gave perjured testimony in a deposition under oath was not acting under color of state law); *Edwards v. Vasel*, 349 F. Supp. 164, 166 (E.D. Mo. 1972), *aff'd*, 469 F.2d 338 (8th Cir. 1972) (police officer who offered perjured testimony at a habeas corpus hearing was not acting under color of state law).

Lawyers who participate in the trial of private state litigation are not considered to be acting under color of state law for purposes of section 1983. *Meier v. State Farm Mutual Auto. Ins. Co.*, 356 F.2d 504, 505 (7th Cir. 1966); *Bates*, 721 F. Supp. at 1581; *Stabler v. Dillon*, 302 F. Supp. 1250, 1255 (S.D.N.Y. 1969). However, a private party who is a willful participant in illegal joint action with a state or its agents is acting under the color of state law. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (private parties bribed

judge and were held not only to be acting under color of state law but outside of the scope of immunity for judicial acts, which the judge retained).

Accepting all of the Plaintiff's allegations as true, neither PO Hondo nor Cunniff were acting under "color of state law" for the purposes of 42 U.S.C. § 1983. When PO Hondo and Cunniff made the allegedly deprivatory statements, they were not cloaked in the authority of the state. PO Hondo was testifying in a civil matter and Cunniff was a private attorney assisting in that testimony. Even assuming that Cunniff and PO Hondo conspired to commit perjury, neither was acting as the State or one of its agents, such that their actions could be termed "under the color of state law" under *Dennis*. There is no relief for Gelband under § 1983. Therefore, because this is the only addition sought in the amended complaint, amendment would be futile.

The court concludes that all three claims asserted are barred by the absolute litigation privilege. Furthermore, the Plaintiff has failed to state a claim on which relief can be granted because he fails to allege facts supporting at least one element or each cause of action.

**The entry is**

1) The Defendants' "Motion for Enlargement of Time to Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss" is GRANTED.

2) The Plaintiff's "Motion for Leave to File Amended Complaint" is DENIED on the grounds of futility.

3) The Defendants' "Motion to Dismiss", with prejudice, is GRANTED

September 30, 2011

_____
Joyce A. Wheeler, Justice

20

Plaintiff-Pro Se

Defendant-Shaun M Garry Esq.